DISTRICT OF OREGON
**F I L E D**
November 07, 2025
Clerk, U.S. Bankruptcy Court

Below is an opinion of the court.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| In re | Case No. 25-61011-pcm13 |
|---|---|
| JOSHUA PAUL BIGHILL and KATHRYN JOANNE BIGHILL, | OPINION[1] |
| Debtors. | |

This matter came before the court on the supplemental objection to confirmation of the debtors' chapter 13 plan filed by the trustee (the "Trustee").[2] The court finds that the debtors have met their burden for confirmation of their plan under § 1325(a) and will overrule the Trustee's objection and confirm the debtors' plan.

---

[1]    The active judges of the district approve this opinion.

[2]    Unless otherwise noted, all references to chapters, sections, and rules are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., and to the Federal Rules of Bankruptcy Procedure, Rules 1001, et seq.

Page 1 – OPINION

Background

The parties do not dispute the relevant facts. Joshua Paul Bighill and Kathryn Joanne Bighill ("Debtors") filed a voluntary chapter 13 petition. Along with the petition, the Debtors filed a chapter 13 plan, the required schedules, statement of financial affairs, and, later, an amended statement of financial affairs ("SOFA"). ECF Nos. 1, 2, 23.

In March of 2024, approximately thirteen months before filing their chapter 13 petition, the Debtors liquidated $94,640 from their 401(k) account. ECF No. 32, p. 1. Of that amount, Debtors used $62,364 to repay creditors, including a $34,659 payment to SoFi Bank ("SoFi"). In exchange, SoFi forgave a remaining debt of $34,659. *Id*. As a result, the Debtors incurred cancellation of indebtedness income, which they disclosed on their 2024 tax return. ECF No. 36, p. 2. The Trustee admits that the Debtors have been fully cooperative with the Trustee in all respects during this case, except for refusing to further amend their SOFA as requested by the Trustee. ECF No. 32, p. 1. When asked about the withdrawal of the 401k funds, the Debtors provided the Trustee with the information he requested, including copies of their 2024 tax returns. ECF No. 36, p. 2.

The Trustee objects to confirmation of the plan, arguing that the Debtors have not satisfied § 1325(a)(1), which requires, with certain exceptions not applicable here, that "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." Specifically, the Trustee asserts that the chapter 13 plan does not comply with § 521(a)(1)(B)[3] because the Debtors failed to disclose the cancellation of indebtedness income in item #5 of the

---

[3]     Section 521(a)(1)(B) provides that, unless the court order otherwise, the debtor shall file certain documents, including "a statement of the debtor's financial affairs[.]"

Page 2 – OPINION

SOFA and the payment to SoFi on the SOFA item #18.   ECF No. 32, p. 2.

Analysis

<u>Definition of "Any Other Income" under Item #5</u>

Item #5 of the SOFA asks: "Did you receive any other income during this year or the two previous calendar years?" Official Form 107.

The court agrees with the Trustee that the Debtors should have listed the cancellation of indebtedness by SoFi on item #5 of the SOFA.   Item #5 mandates the disclosure of any other income "regardless of whether it is taxable."  Although the Bankruptcy Code does not explicitly define "income," the court draws guidance from the Internal Revenue Code, which differentiates between "gross income" and "taxable income."   This distinction aligns with the SOFA's requirement to report income "regardless of whether it is taxable," indicating that debtors must disclose both gross and taxable income, including income from the discharge of indebtedness. *See* 26 U.S.C. § 61(a)(11)("gross income means all income from whatever source derived, including . . . Income from discharge of indebtedness.").

<u>Definition of "Transferred" under Item #18</u>

Item #18 of the SOFA asks: "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?" Official Form 107.

The Trustee argues that the Debtors should have disclosed the payment to SoFi under item #18 of the SOFA because that payment was a "transfer of property."   The court disagrees.  Item #18 requires disclosure of non-monetary property transfers, not payments, and the surrounding context in Part 7 and Part 3 of the SOFA clarifies the distinction between the two terms.

Item #18 mandates the disclosure of transfers of property made within 2 years of the

Page 3 – OPINION

bankruptcy filing. Item #18 is part of Part 7, titled "List Certain Payments or Transfers." Part 7's title suggests a distinction between payments and transfers. Similarly, items #6 and #7 in Part 3 of the SOFA require disclosure of "payments" to creditors within 90 days and one year of filing, respectively, and are separate from item #8, which asks for "payments or transfers" benefiting insiders. Part 7, item #16 asks if the debtor "paid or transferred any property to anyone you consulted," and Part 7, item #17 asks if the debtor "paid or transferred any property to anyone who promised to help," both items highlighting a distinction between payments and transfers. The SOFA is replete with questions that distinguish between transfers and payments. Item #18 only asks if the debtor "sold, traded, or otherwise transferred any property to anyone." Considering items #6 and #7 in Part 3, the title of Part 7, and items #16 and #17 in Part 7, the court concludes that item #18 addresses only non-monetary property transfers, not payments to creditors.

       The court agrees with the Debtors that requiring disclosure of all payments made outside the ordinary course within 2 years of the bankruptcy would be impractical. Because item #18 lacks a monetary threshold, any irregular medical bill payment, mortgage payment, credit card bill payment, or other payment made outside its due date would require disclosure under the Trustee's interpretation. Although the Trustee indicates he would be interested only in "significant" payments, debtors would be left wondering what payments qualify as "significant." Imposing such an ambiguous disclosure requirement could unfairly subject debtors to claims under § 727 for failing to disclose "significant" information. This concern, along with the impracticality of listing every atypical payment made within 2 years of the bankruptcy, and the plain language of the SOFA, demonstrate SOFA item #18 was not intended to include monetary payments to pre-existing creditors.

Page 4 – OPINION

The Trustee also argues that the SOFA is meant to alert the trustee and creditors to all potential avoidable transfers, and thus the payment to SoFi should be disclosed on the SOFA. The court disagrees. Although certain items in the SOFA are intended to alert trustees to avoidable transfers, not all serve that purpose. For example, under § 544, the trustee may recover transfers made up to four years prior to the petition date, yet the SOFA does not require disclosure of such transfers; item #18 only asks for property transfers within the past two years. Thus, even under the Trustee's broad reading, neither item #18 nor other questions in the SOFA require disclosure of all potential avoidable transfers.

Although the Trustee asserts that further SOFA amendments are needed to understand a debtor's financial history, a chapter 13 trustee has discovery tools at their disposal. The § 341(a) meeting provides an opportunity to inquire further into a debtor's financial affairs, as does the availability of Rule 2004 exams. In fact, that is exactly the process that occurred in this case: when asked about the 401(k) liquidation at the § 341(a) meeting, the Debtors provided the Trustee with all requested information.

<u>Section 1325(a)(1)</u>

The Trustee urges the court to read § 1325(a)(1) broadly by ruling that a debtor's failure to abide by § 521(a)(1)(B) violates § 1325(a)(1). The language in § 1325(a)(1), however, is limited. Section 1325(a)(1) limits the inquiry to whether the *plan* complies with the code. It does not require that the *debtor* has complied with the code.

Furthermore, although the Debtors' SOFA did not list the cancellation of indebtedness income under item #5, the court is skeptical that an isolated inaccuracy in the schedules or SOFA necessarily constitutes a violation of § 521(a)(1). *See In re Olson*, 553 B.R. 343, 347 (Bankr. N.D. Ill. 2016)("inaccuracies in Debtor's schedules are not actionable or otherwise violate the

Page 5 – OPINION

terms of § 521(a)(1).").  Ultimately, the court finds that the Debtors' chapter 13 plan complies "with the provisions of this chapter and with the other applicable provisions of this title." § 1325(a)(1).

### Conclusion

Although the Debtors should have disclosed the cancellation of indebtedness income in item #5, the court finds that the plan still complies with § 1325(a)(1).  The Trustee did not raise any other objection to confirmation under § 1325(a), and the court finds that the requirements for confirmation of the Debtors' chapter 13 plan are satisfied.  The court will prepare and enter an order consistent with this opinion.

###